The Board's obviousness judgment in this case must be reversed, because it was premised on improper hindsight reasoning. The Board failed to consider the teachings of the prior art as a whole. It was based on the Jacobson Declaration. Why wasn't that sufficient? The Jacobson Declaration is very, very conclusory, Your Honor. Mr. Jacobson did not make any in the Caterpillar reference that would suggest against doing all of the modifications that he proposed. Well, it's not a single sentence. He explains why it would have been within the ability of someone skilled in the art to combine these two. Well, Your Honor, he does say that he believes it would have been within the skill level, but Your Honor said that he explained why, and I disagree with that. I don't think I see anywhere in Mr. Raymond's declaration where he explains any reason why a person skilled in the art would have made these changes, and that's what we're looking for in the obviousness analysis, is not just that someone could conceivably have done these things, but that someone would have found it obvious to do so. Well, that's a different question, but he explains how someone would have known how to do it, right? I disagree. I think he does pick apart portions of Caterpillar and suggest that somebody would have, for example, separated part of the lower jaw from the mounting mechanism, but he does not actually articulate any way that – well, first of all, as I mentioned a moment ago, he doesn't articulate why a person would do any of this, but he also doesn't articulate how a person would have done this in any way that results in an operable device, and that's another problem that we have with the judgment here. We have, on the one hand, a declaration from Mr. Raymond who has explained after a sincere effort trying to follow the reasoning set forth by the board why one could not disassemble Caterpillar in this manner and turn it into a workable device, because of the support plates interfering and the need to remove one or the other, which both cause other crippling defects to the device. But I actually think that's further along than where the board's error really lies, which is in starting with Caterpillar in the first instance. When you look at Caterpillar, it is fundamentally incompatible with the ideas that are pulled out of the rest of the secondary references, because in terms of how to mount and pivot the jaw set in Caterpillar, it teaches the advantages of doing that in the exact opposite way that the secondary references in the record show. Specifically, Caterpillar reference teaches a jaw set that retains the pivot pin that connects the jaws to each other when that jaw set is being switched for one versus another. Removing a pivot pin in Caterpillar is described as a, quote, very labor intensive and time consuming activity, end quote. That's at A133. So not having to remove that pivot pin when you're replacing a jaw set is what makes Caterpillar a quick change device. It's literally what takes the process from hours down to minutes. And when we look at every other reference in the record, none of them have any quick change feature like that, because they all require removal of that pivot pin in order to change it. And that's why we're talking about the combination of the two. Yes, yes. But when we're looking at the combination of the two, the board did not actually consider the full context of all the references on which it relied. Caterpillar is, it's a feature in Caterpillar to immobilize one jaw, because that is the solution in the Caterpillar's teachings for how to avoid the need to insert and remove the pivot pin as part of the jaw mounting and dismounting. But in light of Ogawa, the jaw can be made movable. Well, Ogawa, Your Honor, Ogawa does have two movable jaws. But in Ogawa, that main pivot pin still needs to be inserted and removed as part of the jaw set being mounted. Now, Caterpillar teaches the only way in this record for how one could mount and dismount the jaw set without that main pin having to be part of the process. And as is explained in Caterpillar, that's time consuming. It also compromises the integrity of the jaw set, because every time you're inserting and removing the pin, there's the opportunity for contaminants,  Caterpillar teaches not using the pin as the attachment point. And the idea is, well, when you combine that with Ogawa, you wouldn't use the pin as the attachment point anymore. Yes, but, so yes, Your Honor's right. Caterpillar teaches don't use the pin as the attachment point. But the only way that Caterpillar teaches to achieve that goal and still have an operable device is to attach the jaw set some other way. And Caterpillar's solution was, well, you attach one of the jaws. That way you have the jaws connected to each other via the pivot pin, but you have the jaw set as a full, as a whole device attached via one of the jaws. And to do that, you had to immobilize that one jaw in the process. So in our view, that is a core foundational principle of what Caterpillar teaches. And it goes against that very principle of Caterpillar to suggest that one would change Caterpillar to then make the second jaw movable when immobilizing the jaw is what gets you the quick change feature that Caterpillar was seeking to achieve in the first place. As I mentioned, every other reference in the record, including Ogawa, is not a quick change device because it requires that pin to be removed and inserted when the jaw sets are mounted or dismounted. And Caterpillar is very critical of those designs. It overcomes the deficiencies of those designs in the way that I just described. And so immobilizing one of those jaws in Caterpillar really is a solution to those deficiencies. It's not just an incidental occurrence. And no person skilled in the art under the Plaspak case or this court's prior precedents, such as in Ray Ratty, would be motivated to depart from that principle of operation. And we think the inquiry should end there. The primary reference, Caterpillar, is defective because it teaches a core principle of operation that goes contrary to what the board says the device should be modified to do. Now, the board also says that because other devices, such as the Ogawa reference, have two movable jaws, it would be obvious, as Your Honor said, to combine those teachings and make Caterpillar have two movable jaws as well. Assuming that a person skilled in the art could overlook the fact that this does depart dramatically from Caterpillar, the problem that we have with the board's reasoning here is that it determined that one jaw versus two jaws being movable was just a, quote, design choice that's well known in the art. The problem is that the record simply doesn't bear that out. Neither Caterpillar nor any other reference teaches how you could permanently retain the pivot pin between the jaws when having both jaws movable. Every two movable jaw reference in the record also mounts the set via the main pivot pin. To the extent that one versus two jaws is a design choice that's well understood in the art, that is only true for non-quick-change devices where the pivot pin has to be used also as the mounting mechanism. When the sole teaching in the prior art only accomplishes a quick-change function by not mounting the pin in that way, we don't see how you could find a person skilled in the art to deem it obvious to do what those secondary references teach when Caterpillar tries to avoid that feature. They choose to believe and credit the expert testimony of Jacobson over Mr. Raymond. Well, on the operability issues, yes they did. We think that was error because Mr. Jacobson's response was so high-level as to be meaningless. It's the kind of conclusory ipse-dixit assertions of an expert that are not entitled to any weight. What Mr. Jacobson says is, in his opinion, these are basic modifications. So if we disagree with you about Jacobson, you lose, right? No, no, I don't think so. Well, because the threshold issue here is whether the Caterpillar reference is even a proper primary reference given what it teaches, and it teaches away from the combination, and that the combination from the board goes contrary to the principle of operation of Caterpillar. So I think before we even get to the secondary references and the combination and the operability issues, there's this threshold question of, would a person reading the prior art as a whole, looking at Caterpillar, would a person proceed down the path that the board suggests? And looking at Caterpillar, looking at the entirety of what Caterpillar criticizes in the prior art, and its solution to overcoming those deficiencies, we submit no person skilled in the art would begin down that path at all. So regardless of the operability issues that occur later on down the path, once a person skilled in the art supposedly gets over that initial issue, we still think that the primary reference is fatally defective and can't support the obviousness judgment. So to get back to Judge Wallach's question, I think stating that in a declaration that these modifications are just within the skill level of a person skilled in the art, that's the kind of conclusory and unhelpful assertion that doesn't get to the issue of obviousness. And obviousness is supposed to be about what a person would have done, and particularly in a field where the level of skill is high, such as this, the context really matters. It's just not true that that's all he said in his declaration. It's just not true. He disagrees, and then he adds a diagram and discusses how he modifies it. I agree. We certainly recognize that Mr. Jacobson did undertake an effort to try to redraw what Caterpillar might look like. That's where we have Mr. Raymond's declaration that conclusively and unrebuttedly disproves that that would yield an optimal design. Okay, but your problem is that we're not the fact finder. The board is the fact finder. They chose Jacobson over Roman. That's something they're entitled to do. Well, the conclusory aspect of Mr. Jacobson's declaration, and if I misspoke, I apologize, it's not that he didn't articulate some way that he would combine it. He never articulated any basis why a person skilled in the art would have started down that path in the first place, and would have made these changes at all. There's nothing about Caterpillar that suggests… He says various points. It is well known in the art that, for example, it's well known to have two jaws pivotally mounted above a main pivot pin, citing U.S. patent, and so on. So that's his foundation. To say it's conclusory, he does have a foundation. He's an expert. He lays a lot of conclusions. How do you say the board can consider that? Because if you look at the patents that he was actually relying on, the underlying evidence, all those patents that he's pointing to to suggest that it is just a simple matter of switching one to two jaws and vice versa, he's pointing only to the non-quick change devices where the main pivot pin is still having to be inserted and removed. There's a very, very critical constraint that's added to the equation by Caterpillar, which says you can't touch that pivot pin, because as soon as you start having to tinker with the pivot pin, you're outside the realm of what Caterpillar specifically wants to achieve. That's your eight-hour removal and reattachment process versus 15 minutes when you don't have to tinker with the pin. So yes, Mr. Jacobson says that it would be obvious to do that, but what he's pointing to doesn't support what he is saying. And otherwise, to simply say that these changes in his mind are, quote, basic, set against a very detailed analysis of why these are anything but basic, and why they run into serious structural defects at every turn along the way, we don't see how the board can rest its judgment on these very high level of abstraction assertions from Mr. Jacobson that aren't supported by the record, when Mr. Raymond's declaration is far more consistent with what the evidence and the prior arts teachings as a whole are revealing. Okay. We'll save you rebuttal time, Mr. Green. Thank you, Your Honor. Mr. Massey. Yes. May it please the Court. My name is Ryan Massey. I represent the third-party requester, Genesis Attachments, in this appeal. The Board of Appeals concluded that it would have been obvious to modify Caterpillar to include two movable blades, as taught by Ogawa. I intend to talk about the evidence that supports their finding that a rational basis existed as to why to modify Caterpillar to have two movable blades, and the evidence that supports their finding that it is within the level of ordinary skill in the art to modify Caterpillar to have two movable blades. Before I start, you may find it helpful to reference the equation that's on page 2 of the appellee brief. I believe it's document number 21, and it would actually be page 7 at the top, as far as the printing goes. As far as establishing the evidence of a rational basis, the Board found not only that Ogawa taught the use of two movable blades, but the Board also found that two movable blades can be opened wider than just one. And you can see that if you have that equation in front of you, the Ogawa figures is in the middle row on the left-hand side, and you can see that those two blades are opened approximately 180 degrees. The Board also recognized that two movable blades have improved operability. It's much like we have opposable thumbs. If you want to grasp something, you can reach out, center the device, and bring both your fingers and your thumb towards the device to grasp it. The Board basically recognized you have that improved operability with two movable blades instead of one. If you imagine your thumb being fixed and not movable, it would take a little bit more concentration to pick up an item by just being able to move your thumb. The question is, what in the prior art, what in the references, teaches or suggests making this particular change, other than looking and seeing what this patentee did, and that it was an improvement? Right. Well, the device of Caterpillar has a very distinct, very unique mounting system. It allows for quick removal of the tool set, and so with Caterpillar, it has just one movable blade and one fixed blade, and I don't think that that is in any way relevant to the Quick Connect system that Caterpillar is disclosing. It just happens to be that they implemented their Quick Connect system on a tool set having one movable blade. So when one having ordinary skill in the art would look at it and say, boy, that would be nifty if I could use that same Quick Connect system with two movable blades, I think it would readily appear to a person having ordinary skill in the art that that would be an obvious combination to make. But your client didn't do it. I mean, this is really what concerns me in this case. A small difference has been made. The need, we've been told, has existed in this industry for a while. The advantage is clear, but until this patentee does it, nobody does it. Caterpillar. So why is it obvious? Well, we're not talking about the Quick Connect system. The Quick Connect system is a 489 patent. The Caterpillar reference discloses that Quick Connect system. I mean, it is actually much quicker to assemble and disassemble than I believe that the patent system would be because it has multiple, the patented system has multiple pins, multiple arrangements, alignments that have to be made. So there are clearly benefits to using the Caterpillar Connect system and adding a second movable blade. But that's not the accused infringing system. Your client isn't using the Caterpillar system as I understand it. Our client is not using the Caterpillar system and is not using the patented system. My client is using an automated system. It actually has automated pins that come out and engage. It just so happens that they have interpreted the bridge that it would read on my client's device. My client's device looks nothing like their device and you can see that from the, I believe it's the 718 patent which is on record. But that's a matter of claim construction infringement. That's not before us, right? Yes. But here we have a clear teaching in Caterpillar of all the benefits of a Quick Connect system that reads on the device of the patent except for the second movable blade which has been added during prosecution of this re-examination proceedings. Okay. So moving forward with establishing the rational basis for the modification, the board recognized that two movable blades have the improved operability. The board noted that the market for tools in which both of the jaws are movable. In addition to Ogawa, the board recognized that the LeBounty 493 patent which is shown in the middle row at the center has two movable blades. They also recognized that the LeBounty patent, the 569 patent, teaches two movable blades. The board found that the art itself established that for some applications it is desirable to have two movable blades. So in view of the substantial evidence, it is clear that a proper rational basis has been established which refutes the patent owner's argument that the combination is based only upon impermissible hindsight. Now with regard to the level of ordinary skill in the art, the board found that the priority of record demonstrates that the level of skill in this art is high. I just heard Mr. Breen say the level of skill in this art is high. He said it here. In particular, the board found that LeBounty, the 493 reference, specifically demonstrates, and I'm quoting, not only the level of skill of one of ordinary skill in the art as to the ability to alter jaws, but also demonstrates that implementing a jaw so that one or both blades are movable is a design choice that is well within the skill of one of ordinary skill. You can see in that middle row of figures, and I apologize that they're reproduced so small, that there's a system with two jaws. In one embodiment of this patent, they show that lower jaw is mounted to a strut that holds that lower jaw in a fixed position. And they also disclose an alternative embodiment where a hydraulic cylinder can be employed to allow movability of that second jaw. So there's clearly a teaching there of great skill in the art, high level of skill in the art to make modifications like what we've proposed in this projection. There's also the declaration of Dan Jacobson. In his declaration, he shows the proposed modification. His modification drawings. Yes. He basically took a drawing that was in the Raymond Declaration, and the Raymond Declaration removed the fixed jaw and left it hanging out in space. And Dan Jacobson looked at it and said, all you would do to modify this is three things. He said you would add a pivot hole, you would add a connecting arm. And you'd add a hydraulic cylinder. And you'd add a hydraulic cylinder. Now, I want to point out, if you look at every other figure on that drawing of that equation, every movable blade has a pivot point, a So the modifications that Mr. Jacobson proposed are not anything other than what you would see on any one of these other pieces of prior art where there's a movable jaw. So the evidence of record clearly establishes that the modification of Caterpillar to include two movable blades is clearly within the level of ordinary skill in the art and is not a major There's clearly discrepancy between the two declarations. One that says this is a very simple modification, and I think that that is shown when you look at how he proposed to modify the second movable jaw to employ that in Caterpillar. He was simply using what was already known in all the other movable jaw systems. The patent owner would argue that none of these efforts and changes would have been obvious to a faceta, a person having ordinary skill in the art. And yet, I think those differences are clearly taught, and I think here the board obviously looked at both declarations, they considered them in detail. I think they weighed more heavily to the convincing evidence of the Jacobson declaration. I have two more issues to discuss, and that is that the patent owner argues that Caterpillar teaches away from the modification. With the device of Caterpillar, what they're looking to do is isolate the pivot pin so that you don't have to disconnect a jaw when you want to disassemble the whole tool set. I think that's clear. Caterpillar does not teach anything about, or teach away from anything about adding a second jaw. It simply wants to make sure that you isolate the pivot pin when you disconnect the whole tool set. So adding a second pivot jaw to that main pivot pin will not change the principle of operation. The device doesn't teach away from that at all. And I guess that gets me to my last point, which is the patent owner argues that the proposed modification changes the principle of operation of Caterpillar. Again, Caterpillar discloses a quick connect system for mounting a tool set to a piece of construction equipment without requiring removal of the pivot pin. The modification to include two movable jaws in no way affects the principle of operation of the quick connect system. It only adds another pivoting jaw out at the end on the pivot pin. Okay. Thank you, Mr. Massey. Mr. Breen. Thank you, Your Honor. Just a few brief points of rebuttal. I believe what Mr. Massey just went through repeated the very errors of the board. I think all stem from this idea of taking the prior arts teachings at far too high a level of abstraction. The equation referenced by Mr. Massey in the red brief here I think is a good indication of how disconnected the teachings relied on by the board are from the actual prior art references as a whole. Mr. Massey began by talking about the idea of having two movable blades and certain operational advantages that might come from that. And that may all be well and good, but the issue is would it have been obvious starting from Caterpillar as the board did to incorporate that feature? And I don't think any person skilled in the art could read Caterpillar and see how that one jaw being immobilized as a central feature of Caterpillar would then proceed down a path that leads to two movable jaws. Had you, on the other hand, looked at the teachings in the prior art of those two movable jaws, you would also see that they're fundamentally incompatible with Caterpillar because of the way the pin mounts the jaw set. So just looking at the idea of two movable jaws is not the same as looking at the actual teachings in Caterpillar and the actual teachings in the prior art of record. At the level of skill in the art, I certainly agree with Mr. Massey that it is high, and as I mentioned a moment ago, that's exactly why the context in these references matters and why the reasoning has to account for the realities and the technological tradeoffs and the structural engineering that goes into these very heavy-duty devices. Mr. Massey mentioned LaBounty as conclusive proof that using one jaw versus two movable is a well-understood routine matter in the art, and that is simply not true because LaBounty includes a feature to change from one to two, but only in the context of a non-quick-change device. There's a major constraint added for Caterpillar and for the 489 patent that it has to be quick change. It has to avoid tinkering with the pivot pin. So to say that LaBounty teaches that interchangeability from one to two jaws is error. There's no support for that assertion in the record that those are interchangeable in the broad sense that the board and Genesis would have this court believe. And again, just returning to the equation of Mr. Massey and Genesis' agreement, KSR and the Graham factors have a lot of weight given to the scope and content of the prior art and the differences between the prior art and the claimed invention. It's very important to consider those in their full context to avoid the kind of high-level of abstraction reasoning that was employed by the board here. If we do not require more detailed analysis of the prior art and its teachings as a whole, then we are inviting the kind of conclusory, high-level reasoning that makes it difficult for any invention to be patentable. Thank you. Thank you, Mr. Breen. Mr. Massey, the case is taken under submission.